516 A.2d 102

Eleanor Zimmerman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs April 18, 1986, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Andrew F. Erba,* for petitioner.

*Samuel H. Lewis,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 16, 1986:

The issue in this unemployment compensation case is as follows:

> Where an employee makes a timely rescission of her resignation and there is no evidence that the employer has relied or acted upon that resignation, may the employee postpone the resignation date and continue working for a temporary period, or can the employer enforce the original resignation date because only a postponement was involved, rather than a permanent or indefinite return to work?

Claimant Eleanor Zimmerman has appealed from an order of the Unemployment Compensation Board of Review which affirmed a decision of the referee denying the claimant's application for unemployment benefits on

the voluntary quit basis, under section 402(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1).

The facts, as found by the referee and adopted by the board, are clear: On June 14, the claimant submitted a resignation from her job with the Philadelphia Assistance Office, to be effective August 2, 1984. However, on June 21 the claimant rescinded her resignation. At that point, the employer had taken no steps to replace her. Aside from a work injury absence from June 20 through July 9, the claimant continued to work until August 2, at which time she ceased work only because the employer insisted upon enforcing that resignation date. The facts confirm that the claimant would have retired September 24, when her workmen's compensation claim was settled.[1]

---

[1] *Referee to Claimant:* (N.T. p. 13—1/10/85)

QR: Mrs. Zimmerman your rescinding on your retirement, was it to be indefinitely or were you putting off for another date for retirement?

AC: I was putting it off for another date of retirement until I found that I would win my Workman's [sic] Compensation because they had sent me a letter saying that my retirement would be reduced because I had no more sick time. They have the letter and that all this would in other words I would not get my retirement that I had sent.

QR: So in effect Mrs. Zimmerman, your intention is to separate yourself from the State.

AC: At my convenience, yes.

QR: Once you have settled the issue of Workman's [sic] Compensation.

AC: Yes.

QR: So the intent is still there. You did not have any intention of continuing to be employed for an indefinite date?

AC: No, I intended to retire at my convenience, not the harrassment that I have gotten from the State.

Thus the facts indicate that, but for the employer's refusal to accept the rescission, the claimant would have postponed her retirement at least until September 24, and therefore would have worked and earned pay for seven more weeks. Clearly her unemployment during those seven weeks was solely because of the employer's fiat, rather than because of the claimant's choice.

Under the board's finding of fact, it is clear that this claimant did not intend to remain in the work force permanently,[2] but it is equally clear that she did intend

*Employer's Tax Consultant to Employer's Witness:* (N.T. p. 16—1/10/85)

QET: Okay. So effective August 3, 1984, the Philadelphia County Board of Assistance regarded Mrs. Zimmerman's status as that of being retired as originally agreed upon in June of 1984. There had been no change. Her case and her appending injury had nothing to do with the retirement.

AEW: No, it did not.

QET: And she was informed of that?

AEW: Yes, but Mrs. Zimmerman had also in this letter that was submitted to the Retirement Board had in fact delayed her retirement. The attorney had requested that they put a hold on it. There are also copies of letters from Mrs. Zimmerman to the Retirement Board personally requesting that the retirement be delayed pending a decision. That is not delaying the acceptance, but rather delaying the process which is the reason then that Mrs. Zimmerman mentioned that there were months of delay in receiving checks. *It was not until September 24, 1984, that Mrs. Zimmerman went to Albert Mastrini (phonetic) who is the head of the employees State Retirement System and requested that please do not hold processing my retirement application as I won my case (inaudible) which is at that time we received notification in September from State Workman's [sic] Insurance that they had rescinded their denial of her Workman's Comp. Claim.* They had initially denied the claim. (Emphasis added.)

[2] Claimant's intent to retire was further evidenced by the fact that she initially planned to retire in December of 1983, but re-

to continue working for a limited period. She simply sought to postpone her retirement date. There is no doubt that the reason for her postponement was to remain on the job while settling her worker's compensation claim. However, she was willing to do her work during that period.

Was this claimant entitled to postpone her retirement for seven weeks—for whatever motive—where the employer had taken no action in reliance upon her earlier retirement date?

The established rule is that a resignation which is later revoked remains a voluntary termination of employment if the employer has taken steps to replace the employee before the revocation. *Hale v. Unemployment Compensation Board of Review*, 57 Pa. Commonwealth Ct. 245, 425 A.2d 1261 (1981); *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976); *Soyster v. Unemployment Compensation Board of Review*, 197 Pa. Superior Ct. 547, 180 A.2d 123 (1962).

However, in *Tretter v. Unemployment Compensation Board of Review*, 62 Pa. Commonwealth Ct. 70, 434 A.2d 919 (1981), this court has, with equal definiteness, established the proposition that an employee may revoke a resignation effectively, so that it does not constitute a voluntary termination, if the employer has *not* taken any steps to replace the employee.

*Tretter* is a decision virtually on all fours with the present case. There the claimant, after submitting a resignation to be effective on June 1 of 1979, informed the employer that he wished to postpone his resignation date until September, in order to attain maximum So-

---

scinded her retirement because she did not meet the ten-year requirement which would have allowed her Blue Cross and Blue Shield benefits. *See* specific finding of referee, Number 2, in the record dated December 14, 1984.

cial Security entitlement. Although the employer had already notified the pension insurer concerning the June date, no steps to replace the employee had been taken and no other commitment had been made. This court therefore stated:

> We therefore hold that claimant here has met his burden of showing that arrangements for his replacement had not been made at the time he notified the personnel manager that he wished to continue working, at least until he had earned the maximum allowed under Social Security regulations.

62 Pa. Commonwealth Ct. at 75, 434 A.2d at 922.

Thus, as recently as 1981, this court adopted as a definite rule the converse implication which we had left as assumed, but undecided, in *Walker,* 27 Pa. Commonwealth Ct. at 524, 367 A.2d at 368.

*Tretter* provides a striking parallel to the present case because we there also recognized the validity of postponing a resignation in order to achieve an augmentation of employee benefits—Social Security benefits in *Tretter* and worker compensation benefits in this case.

*Dykan v. Unemployment Compensation Board of Review,* 197 Pa. Superior Ct. 153, 177 A.2d 160 (1962), is of no effect with respect to the issue in this case. There the Superior Court twenty-four years ago permitted an employer to hold a pregnant employee to her earlier resignation date, apparently on the basis of a company policy arbitrarily requiring separation of employees after six months of pregnancy. In the light of our present-day scrutiny of policies singling out female employees on the ground of pregnancy alone, the *Dykan* result is questionable.

To hold for unemployment compensation purposes that, where no replacement steps have been taken, an employee may not postpone a resignation but can only

rescind it entirely, obviously would encourage employees hereafter to conceal postponement intentions and to profess—temporarily—a desire to return permanently to work. Because that result, in the long run, plainly would be disadvantageous to employers as well as to employees, judicial adoption of such a distinction would confer no benefit upon the business community or upon the compensation system.

Because the claimant is entitled to compensation with respect to the seven weeks during which she was able and willing to work, the board's decision is reversed.

## ORDER

NOW, October 16, 1986, the order of the Unemployment Compensation Board of Review, No. B-238315, dated February 26, 1985, is reversed.

---

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent.

The question of whether a retirement becomes an involuntary termination when a retiree, retiring with full pension benefits, attempts to rescind her retirement in order to remain eligible for Employer provided economic benefits has not previously been addressed by this Court. I strongly disagree with the majority's suggested resolution of this question.

In the instant case, the Unemployment Compensation Board of Review (Board) affirmed the decision of a referee concluding that Eleanor Zimmerman (Claimant) voluntarily terminated her employment without cause of a necessitous and compelling nature under Section 402(b) of the Unemployment Compensation Law (Law).[1]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1).

That section states, in pertinent part:

An employe shall be ineligible for compensation for any week— . . .

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .

It is beyond dispute that retirement is a voluntary termination of employment. *Matty v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 311, 457 A.2d 1039 (1983); *Adamski v. Unemployment Compensation Board of Review,* 64 Pa. Commonwealth Ct. 639, 441 A.2d 502 (1982).

The fundamental purpose of the Law is to provide compensation during a search for work to individuals who are unemployed through no fault of their own. *Renne v. Unemployment Compensation Board of Review,* 499 Pa. 299, 453 A.2d 318 (1982); *Matty v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 311, 457 A.2d 1039 (1983); *Barillaro v. Unemployment Compenstion Board of Review,* 36 Pa. Commonwealth Ct. 325, 387 A.2d 1324 (1978). It was "designed to alleviate the rigors of unemployment and most specifically to assuage the distress of the individual unemployed worker." *Gladieux Food Service, Inc. v. Unemployment Compensation Board of Review,* 479 Pa. 324, 330, 388 A.2d 678, 681 (1978). Basic to this concept is the demonstrated willingness to remain part of the work force.

Petitioner readily admits that she does not wish to remain a part of the work force. In fact, Petitioner testified that she intended to retire at her convenience and only wanted to rescind her retirement until a Workmen's Compensation Award became final.[2] The instant case is not the situation that the Law intended to reme-

---

[2] *See* majority opinion fn. 1.

dy. A claimant who retires with full pension is *not invol-untarily unemployed without income.* Claimant merely wanted to postpone her retirement because she believed that retirement would disqualify her from collecting Workmen's Compensation.[3]

President Judge JAMES C. CRUMLISH, JR. in his able and well articulated opinion *Spong v. Unemployment Compensation Board of Review,* 44 Pa. Commonwealth Ct. 560, 404 A.2d 444 (1979), stated the rationale that under Section 402(b) conduct which evidences a lack of genuine desire to work and be self-supporting and which discourages continuing employment can be a basis for disqualification from Unemployment Compensation benefits.

Claimant has set out to retire on two occasions.[4] She has stated that her sole reason for returning to work was the preservation of a Workmen's Compensation claim.[5] This is conduct which clearly discourages continuing employment and does not evidence a genuine desire to work and remain self-supporting.

The majority states that *Tretter v. Unemployment Compensation Board of Review,* 62 Pa. Commonwealth Ct. 70, 434 A.2d 919 (1981) is controlling. However,

---

[3] *See* transcript of January 10, 1985 Unemployment Compensation Board of Review hearing, pg. 8.

[4] *See* majority opinion fn. 2.

[5] *See* letter from Robert H. Freeman, Director of Personnel and Labor Relations, Philadelphia County Board of Assistance to Eleanor Zimmerman appended to transcript of January 10, 1985 Unemployment Compensation Board of Review hearing and made a part of the record as Exhibit # 12. By way of response, Ms. Zimmerman wrote the following on the bottom of the letter and sent it back to Mr. Freeman:

> I am cancelling my retirement due August 2, 1984 until the decision is made by Workmen's Compensation Board . . . I will be ready to retire as soon as I receive my checks that I am entitled.

*Tretter* addresses the situation under our developing case law in the area of resignation, not retirement. Further, *Tretter* focuses on the actions of the employer. The actions of an employer are not relevant to the situation where a claimant retires with full pension benefits, rather than resigns to seek other employment.

*Pennsylvania Department of Labor and Industry v. Unemployment Compensation Board of Review,* 94 Pa. Commonwealth Ct. 44, 502 A.2d 771 (1986) again focuses on resignation and retirement as if they are synonymous. However, there is a clear distinction between resignation and retirement and *Pennsylvania Department of Labor and Industry* is factually distinguishable because the claimant therein engaged in conduct which evidenced a genuine desire to work and be self-supporting. There, claimant attempted to rescind her retirement because she found that she could not live on the amount of her pension and intended to remain permanently, not temporarily, attached to the work force. This is unlike the claimant in this case who only wanted to rescind her retirement for a brief period of time in order, she believed, to remain eligible for Workmen's Compensation.

Because the Law did not intend to remedy the Claimant's situation and because Claimant has voluntarily terminated her employment by retiring without evidencing a genuine desire to work and be self-supporting, I believe that we must affirm the Order of the Board denying Unemployment Compensation to Claimant.