Louis W. P. Jenkins, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs October 3, 1983, to Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*Harold I. Goodman,* of counsel, *Claudia D. Spadaro,* for petitioner.

*Charles Donahue,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, November 14, 1983:

The claimant in this unemployment compensation case appeals from an order of the Unemployment Compensation Board of Review declaring him ineligible on the ground that he was discharged from

work for willful misconduct. Section 402(e) of the Unemployment Compensation Law, 43 P.S. §802(e).

The claimant was last employed as a bus driver for Greyhound Lines, Inc. He was discharged on April 17, 1982 and submitted an application for unemployment compensation on May 2, 1982. On May 25, 1982, the Office of Employment Security issued a determination finding the claimant ineligible for benefits because he was discharged for willful misconduct. The claimant appealed and after a hearing conducted by telephone the referee affirmed the denial of benefits. Th Unemployment Compensation Board of Review affirmed.

The incident of misconduct alleged by the employer and found by the Unemployment Compensation Board of Review to have been proved by substantial competent evidence is described in the Board's finding number nine:

> 9. The claimant was terminated for refusal to follow a direct order.

Among the issues raised by the claimant is that of whether this finding is supported by substantial evidence of record. We agree that it is not.

At the hearing conducted by the referee the employer's district manager testified over the telephone as to the events which occurred on April 17, 1982:

> Referee: All right what was the reason he [the claimant] was terminated this time in April of 1982?
>
> District Manager: He refused to drive the bus.
>
> Referee: And whom was the argument with?
>
> District Manager: With the Superintendent of Operations, terminal operations, Mr.

Kelly, and the assistant terminal manager, Mr. Perez, both of whom were involved.

Referee: Are either of them present?

District Manager: Pardon me?

Referee: Are either of them present to be available for this hearing?

District Manager: No they're not.

. . . .

Referee: Well how do you know of the incident which caused the termination of Mr. Jenkins?

District Manager: Oh, do you mean do I have any written statements from anybody involved?

Referee: Yes.

District Manager: Sure I do.

Referee: From whom?

District Manager: Well I have them from Mr. Kelly and I have them from Mr. Perez both.

The district manager proceeded to testify, over the telephone, from the statements allegedly prepared by Mr. Kelly and Mr. Perez. According to these statements, on April 17, 1982, the claimant was assigned to drive a bus from New York City to Providence, Rhode Island. The claimant told his superiors that he was unfamiliar with two of the scheduled stops and asked permission to "ride the schedule"—that is to accompany another driver along the same route. The claimant's request was refused and he was offered "trip notes" which contained directions to the stops with which the claimant was not familiar. The claimant allegedly insisted that he be permitted to "ride the schedule" and refused three direct orders to load his passengers and begin his route.

The claimant testified that he was assigned to drive the bus from New York City to Providence, Rhode Island; that he was not familiar with two of the scheduled stops; that he requested and was denied permission to "ride the schedule"; but that he was not offered "trip notes"; and that he was not given direct orders to load his bus and begin the route.

At issue is whether or not the claimant refused to obey the direct orders of his superior. The employer's evidence to the effect that the claimant refused to obey direct orders consists solely of the hearsay testimony of the employer's district manager.

Hearsay testimony may be sufficient to support a finding of the Board if it is not objected to and is corroborated by other competent evidence. *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976).

The Board found corroboration of the hearsay testimony in the following statement made by the claimant in the Summary of Interview form he completed for the Office of Employment Security:

On 4/17/82 I were assign the Providence, R.I. local which I did not had any knowledge of. I call dispatcher Martin and explain to him I wish to take a student trip on the schedule he said yes if you don't know it and that he will speak to Mr. E. Kelly about this problem. Mr. E. Kelly asks me what is the matter and I explain to him as I explain to Mr. Martin. Mr. E. Kelly said hell no if you don't know it see Mr. R. Jasper. . . .

While the statement corroborates the hearsay to the effect that the claimant was assigned to drive a bus from New York to Rhode Island and that he requested to "ride the schedule," it does not bear on, and therefore does not corroborate, the hearsay testimony that

the claimant refused the direct orders of his superiors to load the bus and begin his route.

Since the employer failed to sustain its burden to prove willful misconduct by the claimant, we reverse the order of the Unemployment Compensation Board of Review and remand the record for computation of benefits. Jurisdiction is relinquished.

## ORDER

AND Now, this 14th day of November, 1983, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed and the record is remanded for computation of benefits. Jurisdiction is relinquished.