879 A.2d 146

**CITY OF PHILADELPHIA, Appellant**

v.

**CIVIL SERVICE COMMISSION and
Kimberly Hayes, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 2004.

Decided June 20, 2005.

414

Lawrence Caleb Beck, Martin Gerard Malloy, Philadelphia, for City of Philadelphia, appellant.

W. Michael Mulvey, Richard Raymond Budney, Jr., for Kimberly Hayes, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NIGRO.

The issue in this case is whether the Commonwealth Court erred in affirming the trial court's ruling that the Civil Service Commission (the "Commission") could rely on hearsay evidence in the form of unsworn medical records in deciding a claim for injured-on-duty ("IOD") benefits. For the following reasons, we hold that the Commonwealth Court did not err and therefore affirm.

On December 19, 1999, Appellee Kimberly Hayes, a Philadelphia police officer, fractured her right ankle during a scuffle that occurred when she was attempting to arrest a suspect. Officer Hayes obtained treatment for her injury and Appellant the City of Philadelphia (the "City") placed her on IOD status, which allowed her to receive disability benefits equal to 100 percent of her pre-injury base pay while she was out of work. *See* Civil Service Reg. 32.0414. In April 2000, Officer Hayes returned to work in a limited duty position and stopped receiving IOD benefits.[1] On September 27, 2000, the City referred Officer Hayes to Dr. Edward L. Chairman, a foot specialist. Based on his examination, Dr. Chairman recommended not only that Officer Hayes wear an ankle brace to reduce the stretching of her ligament, but also that she undergo an MRI to determine the extent of the damage to her anterior talo fibular ligament, which Officer Hayes tore when she fractured her ankle.[2]

In February 2001, Officer Hayes resumed her regular patrol duties, but the following month, she again visited the

1. Officer Hayes continued to receive physical therapy for her ankle when she returned to work.

2. The anterior talo fibular ligament is located in the ankle.

hospital for pain in her ankle. As a result of her continuing ankle problems, Officer Hayes returned to a limited duty position in April 2001. In late June 2001, Officer Hayes met with Dr. Chairman and following that meeting, Dr. Chairman concluded that Officer Hayes had chronic pain from the tear to her anterior talo fibular ligament. In July 2001, two doctors examined Officer Hayes at the City's request and cleared her to return to her regular full duty patrol position. Thus, Officer Hayes reluctantly returned to full duty status in August 2001.

On September 11, 2001, shortly after returning to her regular full duty position, Officer Hayes was retrieving her police cruiser from a service station when she lost her footing on a concrete curb and fell. She was taken to the emergency room, where she received treatment for injuries to her left knee, right arm and other areas of her upper body. Notably, Officer Hayes did not immediately notice any increased pain to her right ankle at the time of the fall. Moreover, following the fall, Officer Hayes continued to work in a full duty capacity, although she used several sick days because of pain in her right ankle. In mid-October, Officer Hayes informed her sergeant of her ankle pain and requested that the City conduct another medical examination of her ankle, but the City denied that request.

On October 30, 2001, Officer Hayes used accumulated sick leave to take time off from work because of her ankle pain. Two days later, on November 1, 2001, Officer Hayes again saw Dr. Chairman and during that meeting, Dr. Chairman recorded Officer Hayes' account of the September 11th fall, noted inflammation and sensitivity in her right ankle, and ultimately diagnosed her with "inflammation and swelling, right lateral ankle [and] possible [anterior talo fibular] ligamentous tear." 11/01/01 Report of Dr. Chairman. Dr. Chairman recommended a soft cast to immobilize Officer Hayes' right foot for two to three weeks as well as ankle injections. Dr. Chairman also cleared Officer Hayes to return to a limited duty position on December 5, 2001. The City, however, would not honor Dr. Chairman's recommendation that she return in a limited

duty capacity. Accordingly, Officer Hayes remained out of work, continuing to use her accumulated sick leave, until January 12, 2002, when she returned to her full duty patrol position. On January 15, 2002, Dr. Richard Whittaker, a doctor for the City, examined Officer Hayes and concluded that her right ankle injury had healed. 1/16/02 Report of Dr. Whittaker.

After returning to work in January, Officer Hayes requested that the City grant her IOD status for the time she missed work between October 30, 2001 until January 12, 2002 (the "2001–2002 absences"), claiming that she was out of work during that time because she had suffered a reoccurrence of her December 19, 1999 work-related ankle injury when she fell on September 11, 2001. The City, however, refused to grant that request, finding that Officer Hayes had not suffered a reoccurrence of her ankle injury during the September 11th fall because she did not miss work for ankle problems until six weeks later. Therefore, the City refused to convert Claimant's sick leave to IOD leave.

Officer Hayes appealed the City's decision to the Commission pursuant to Civil Service Regulation 32 ("Regulation 32").[3] The Commission held a hearing on the matter on February 5, 2002, at which it accepted, over the City's hearsay objections, Officer Hayes' evidence, including an X-ray and a MRI, both administered by Dr. Chairman, and Dr. Chairman's

---

**3.** Specifically, Officer Hayes appealed pursuant to Regulation 32.11 which states as follows:

32.11–REGULATION 32 EMPLOYEE REFUSING TO RETURN TO WORK ON INSTRUCTIONS FROM THE MEDICAL DIRECTOR OR THE MEDICAL DIRECTOR'S DESIGNEE. A Regulation 32 employee who is instructed by a physician authorized by the Medical Director, to return to work, either on a full-active basis or limited duty basis, and does not do so, is being insubordinate, even if the employee feels physically unable to return to work. In such a situation, however, the employee may appeal to the Civil Service Commission. Should the employee file an appeal with the Civil Service Commission within thirty (30) days of such refusal to return to work, any absence from work for the period between the date of filing such appeal and the date a decision thereon is entered by the Commission shall be charged against accrued sick leave, vacation leave or holiday compensatory time.

Civil Service Reg. 32.11.

notes taken during his meetings with Officer Hayes between September 27, 2000 and December 5, 2001. In response, the City submitted Dr. Whittaker's records from his January 15, 2002 evaluation of Officer Hayes, as well as records from the examinations of Officer Hayes performed by the City's doctors in June and July of 2001. Ultimately, relying upon Officer Hayes' testimony and Dr. Chairman's notes, the Commission awarded Officer Hayes IOD benefits for the 2001–2002 absences, concluding that the City had failed to meet its burden of showing that Officer Hayes' time off was not related to her original December 19, 1999 ankle injury.

The City appealed the Commission's order, arguing that the Commission improperly relied on inadmissible hearsay in granting Officer Hayes benefits. The trial court, however, disagreed. Specifically, the trial court noted that Pennsylvania courts have routinely applied principles from the Workers' Compensation Act ("WCA") [4] in Regulation 32 cases relating to IOD benefits and that section 422 of the WCA permits a Workers' Compensation Judge to base findings of fact upon unsworn medical reports in cases involving disability of fifty-two weeks or less.[5] Thus, the trial court held that pursuant to section 422, the Commission properly relied upon Dr. Chairman's unsworn notes in finding that Officer Hayes was entitled to IOD benefits. Moreover, the court found that given Dr. Chairman's notes, Officer Hayes sufficiently established

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

5. Section 422 of the Workers' Compensation Act provides, in relevant part:

> *Where any claim for compensation at issue before a workers' compensation judge involves fifty-two weeks or less of disability, either the employe or the employer may submit a certificate by any health care provider as to the history, examination, treatment, diagnosis, cause of the condition and extent of disability, if any, and sworn reports by other witnesses as to any other facts and such statements shall be admissible as evidence of medical and surgical or other matters therein stated and findings of fact may be based upon such certificates or such reports.* Where any claim for compensation at issue before a workers' compensation judge exceeds fifty-two weeks of disability, a medical report shall be admissible as evidence unless the party that the report is offered against objects to its admission.

77 P.S. 835 (emphasis added).

that her 2001–2002 absences were due to an aggravation of her December 19th work-related injury.[6]

The City appealed from the trial court's order to the Commonwealth Court. Following its review of the matter, the Commonwealth Court affirmed the trial court's order without dissent, agreeing that the Commission had properly considered Dr. Chairman's unsworn notes based on section 422 of the WCA.

On appeal to this Court, the City argues that the Commonwealth Court's conclusion in this regard was incorrect. Specifically, the City argues that section 422 of the WCA is inapplicable here and that instead, the governing law regarding the consideration of hearsay in a proceeding before the Commission is that set forth in *Walker v. Unemployment Comp. Bd.*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976). We disagree.[7]

---

**6.** In its appeal to the trial court, the City also took issue with the Commission's conclusion that the City had the burden of proving that Officer Hayes' absences were not work-related pursuant to Civil Service Regulation 32.11. The City acknowledged that Officer Hayes had framed her appeal as one under Regulation 32.11, and that the burden of proof for an appeal under Regulation 32.11 would lie with the City. However, it argued that Officer Hayes should have brought her appeal pursuant to Regulation 32.12, which governs appeals pursued by employees who have been "aggrieved by a finding as to the existence, nature, or service-connection of the employee's disability," and pointed out that Regulation 32.12 requires a claimant to prove that she is out of work due to work-related injuries in order to obtain benefits. Civil Service Reg. 32.12. The trial court agreed with the City, but concluded that the error was harmless, as the evidence Officer Hayes had presented to the Commission was sufficient to satisfy her burden under Regulation 32.12. On appeal, the Commonwealth Court agreed with the trial court that the Commission had erred in placing the burden on the City, but that this error was harmless. Thereafter, in its Petition for Allowance of Appeal to this Court, the City argued that, in fact, the Commission's error was not harmless. However, we did not grant allowance of appeal to consider this burden of proof issue and thus, we do not address it further here.

**7.** This Court's scope of appellate review where the lower courts have limited themselves to the record before the Commission is to determine whether constitutional rights were violated, whether the Commission committed an error of law or a manifest abuse of discretion, and whether the Commission's findings are supported by substantial evidence. *See City of Phila. v. Civil Svc. Comm'n of City of Phila.*, 565 Pa. 265, 772 A.2d 962, 966 n. 2 (2001).

■ As this Court has stated previously, Civil Service Regulation 32, which governs the award of IOD benefits to City employees, is "similar in intent and form" to the WCA. *See City of Phila.*, 772 A.2d at 965 (citing *Sammons v. Civil Svc. Comm'n of City of Phila.*, 673 A.2d 998, 1002 (Pa. Commw.1996)). Indeed, both Regulation 32 and the WCA are specifically designed to provide compensation to individuals who are injured in the course of their employment and who suffer lost wages as a result. *See Smith v. Civil Svc. Comm'n of City of Phila.*, 53 Pa.Cmwlth. 164, 417 A.2d 810, 812 n. 1 (1980) ("Regulation 32 was enacted to provide benefits for all employees of the City of Philadelphia in the event they were injured or disabled in the course of their public service."); *Hertz–Penske Truck Leasing Co. v. Workers' Compensation Appeal Board (Bowers)*, 546 Pa.257, 684 A.2d 547, 549 (1996) ("[T]he legislative intent behind the [WCA] is simply to provide compensation to employees who suffer work-related injuries."). In fact, given that the two schemes are designed to compensate for the same type of loss, the Civil Service Regulations make clear that a claimant cannot simultaneously collect both workers' compensation *and* IOD benefits for the same injury. *See* Civil Service Regs. 32.013, 32.023, 32.09. Ultimately, because of the underlying similarities of the two compensation systems, this Court has stated that "the principles enunciated in interpreting [the WCA] will apply to Regulation 32 where similar substantive issues are involved." *City of Phila.*, 772 A.2d at 965 (citing *Sammons*, 673 A.2d at 1002). Indeed, on numerous occasions, Pennsylvania courts have looked to the WCA and the cases interpreting it for guidance in resolving issues that the Civil Service Regulations do not address. *See, e.g., City of Phila.*, 772 A.2d at 965–969 (applying workers' compensation standards for "psychic injury" and "abnormal working conditions" to Regulation 32 claim); *Campbell v. Civil Svc. Comm'n of City of Phila.*, 717 A.2d at 576 (Pa.Commw.1998) (applying burden of proof as set forth in section 772 of WCA and interpretive caselaw to Regulation 32 claim); *Smith*, 53 Pa.Cmwlth. 164, 417 A.2d 810 (applying workers' compensation standards for unequivocal medical testimony and forfeiture of benefits to Regulation 32 claim).

Here, the Civil Service Regulations are silent regarding the admission and use of unauthenticated medical reports in an IOD proceeding and thus, the question before this Court is whether we may look to the WCA for guidance on the admission and use of such reports. The City maintains that the WCA is not applicable because the governing precedent only permits reference to the WCA to resolve *substantive issues* and the admissibility of hearsay is not a substantive issue, but rather is a "threshold determination, procedural in character and nature." City's Brf. at 12. The City therefore argues that we are required to look to general agency law, which does not permit reliance on uncorroborated hearsay such as that at issue here. *See id.* (citing *Walker v. Unemployment Comp. Bd.,* 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976)). We disagree.

While the City is correct that we have quoted with approval Commonwealth Court precedent that states that the principles in the WCA may be applied in IOD proceedings "where similar substantive issue are involved," *City of Phila.,* 772 A.2d at 965 (citing *Sammons,* 673 A.2d at 1002), the reality is that courts applying this precedent have not undertaken the complex analysis that is necessary to determine whether a rule is, in fact, substantive or procedural, before concluding whether workers' compensation law is applicable. For example, while the Superior Court has noted that "a statute establishing a burden of proof is difficult to classify as either a procedural rule or a rule affecting substantive rights and seems to contain elements of each," *Commonwealth v. Sargent,* 349 Pa.Super. 289, 503 A.2d 3, 6 (1986) (citing *Commonwealth v. Sorrell,* 500 Pa. 355, 456 A.2d 1326, 1331 (1982)), the Commonwealth Court has nevertheless used the WCA burden of proof in IOD cases without making any attempt to first establish that the burden of proof is, if fact, a substantive matter. *See Campbell,* 717 A.2d 574; *Ciccimaro v. City of Phila.,* 110 Pa.Cmwlth. 574, 532 A.2d 1255 (1987).

Undoubtedly, part of the reason why courts have not engaged in an analysis as to whether the law they seek to import from the workers' compensation context is substantive or

procedural is because such an analysis is exceedingly difficult. Indeed, this Court has struggled with the task of delineating clear guidelines for making such a procedural/substantive determination. As a general matter, we have stated that "substantive law is that part of the law which creates, defines and regulates rights, while procedural laws are those that address methods by which rights are enforced." *Commonwealth v. Morris,* 565 Pa. 1, 771 A.2d 721, 738 (2001). However, we have also acknowledged that:

> The attempt to devise a universal principle for determining whether a rule is inherently procedural or substantive in nature has met with little success in the history of our jurisprudence.... Procedural law is undeniably an integral thread in the fabric of the law. As threads are woven into cloth, so does procedural law interplay with substantive law. Together, they create a cohesive whole. However, it is this very proximity which often leads to difficulty in identifying one thread as procedural and another as substantive.

*Laudenberger v. Port Authority of Allegheny Cty.,* 496 Pa. 52, 436 A.2d 147, 150 (1981).

The instant case further illustrates the difficulty of applying a procedural/substantive distinction as the City argues that hearsay is procedural, but does not develop any argument advancing its position, much less attempt to apply the general standard that this Court has set forth for distinguishing between substantive and procedural matters. Meanwhile, Officer Hayes refuses to even engage in a substantive/procedural debate, calling the distinction "unnecessary." Officer Hayes' Brf. at 9. Finally, this Court's own research into the issue reveals no clear authoritative precedent as to whether hearsay rules are procedural or substantive. *Compare Ruth Family Medical Ctr. v. Workers' Compensation Appeal Board (Steinhouse),* 718 A.2d 397, 402 (Pa.Commw.1998) (characterizing section 422's hearsay rule as "purely procedural") *and Dallas Cty. v. Commercial Union Assurance Co., Ltd.,* 286 F.2d 388, 392 n. 3 (5th Cir.1961) (finding federal hearsay rule rather than state hearsay rule to apply in federal proceeding, reasoning that admissibility of evidence is a procedural matter, not a

substantive matter), *with In re Cartwright*, 870 So.2d 152, 157 (Fla.Dist.Ct.App.2004) (holding legislative provision authorizing the admission of hearsay in proceedings for the involuntary civil commitment of sexually violent predators to be a substantive provision, not a procedural provision) *and Blielevens v. Commonwealth, State Civil Svc. Comm'n.,* 11 Pa. Cmwlth. 1, 312 A.2d 109, 111 (1973) ("[T]he Hearsay Rule is not a technical rule of evidence but a basic, vital and fundamental rule of law. . . .").

■ Ultimately, however, we conclude that we need not resolve this thorny issue regarding the prevailing nature of hearsay rules as the pervasive difficulties courts face in analyzing whether matters are substantive or procedural in nature renders it neither desirable nor practical to require the Commission to rely on such distinctions in ascertaining whether resort to workers' compensation law is justified in any particular circumstance. Instead, we conclude that the Commission should simply apply workers' compensation law to IOD proceedings in those limited circumstances in which (1) there is a discrete gap in the Civil Service Regulations that must be filled by reference to another body of law, and (2) there is directly applicable workers' compensation law which is separable from its context and which can be applied in the IOD proceeding without otherwise disrupting Regulation 32's existing structure. As explained above, application of workers' compensation law in these specific circumstances is justified given Regulation 32's "similarity in intent and form" to the WCA, which, in the end, makes the WCA a better reference tool than local agency law in IOD proceedings. *See City of Phila.*, 772 A.2d at 965.

■ Applying these principles to the specific issue at hand, it is clear that the WCA's rule regarding the admissibility of hearsay documents should apply in IOD proceedings. Indeed, it is undisputed that there is a gap in Regulation 32 as it does not address the discrete issue of when, if ever, hearsay may be admitted to prove a claimant's entitlement to benefits, and both parties agree that it is therefore necessary to look to

another body of law to supplement Regulation 32's provisions. While the City urges us to apply the general evidentiary rules of local agency law, the WCA contains a provision that is not only directly on point, *i.e.*, section 422, but which can also be applied in the IOD context without disrupting Regulation 32's existing scheme. Moreover, section 422 is not inextricably intertwined with other provisions of the WCA that are incompatible with Regulation 32 and thus, it can be divorced from the WCA and applied in the IOD context, without implicating other concerns.[8] Indeed, it seems plain that section 422's allowance of hearsay evidence is complementary to both the workers' compensation system and the IOD system, as it allows for greater efficiency in the administration of short-term benefits covering periods of one year or less.[9] *See Ruth Family Med. Ctr.*, 718 A.2d at 402.

Having concluded that section 422 is applicable in IOD proceedings, we also necessarily reject the City's assertion that the Commission erred in failing to follow the hearsay rule

8. As this Court recognized in *Gunter v. Workers' Compensation Appeal Board (City of Phila.)*, there are certain procedural differences between the WCA and Regulation 32, one of which is that Regulation 32 "contains no provision equivalent or analogous to" the WCA's provisions regarding a notice of compensation payable ("NCP"). 573 Pa. 386, 825 A.2d 1236, 1241 (2003). As such, there are plainly provisions of the WCA that will not be transferable to Regulation 32, either because they do not neatly fill a gap in Regulation 32 or because they are so inextricably linked to procedures unique to the workers' compensation setting that they simply cannot be disentangled from that setting for application elsewhere. That said, in *Gunter*, this Court declined to decide whether the payment of IOD benefits was the equivalent of the issuance of an NCP under the WCA for purposes of precluding or estopping the City from subsequently contesting a claim for workers' compensation benefits, instead deciding the case on other grounds.

9. We recognize that Regulation 32 generally limits IOD benefits to a period of one year. *See* Civil Service Reg. 32.0511 (permanent disability); Civil Service Reg. 32.045 (temporary disability); Civil Service Reg. 32.07 (disability incurred subsequent to eligibility for retirement). Thus, application of section 422 will ultimately permit hearsay evidence in most, if not all, IOD cases as it permits hearsay in cases involving claims for benefits for 52 weeks or less. However, this fact does not affect our conclusion that section 422 applies in IOD cases as the goal of efficiency in the administration of short-term benefits simply has wide application in IOD proceedings where claims are more often than not for short-term benefits.

set forth in *Walker*, 27 Pa.Cmwlth. 522, 367 A.2d 366. In *Walker*, the Commonwealth Court held that in proceedings before the Unemployment Compensation Board, "(1) hearsay evidence, properly objected to, is not competent evidence to support a finding of the Board and (2) hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding of the Board, if it is corroborated by any competent evidence in the record, but a finding based solely on hearsay will not stand." *Id.* at 370. This rule has since been applied in a variety of other agency proceedings, including certain IOD proceedings, and thus, the City asserts that it should have been applied here. *See Campbell*, 717 A.2d at 578 (IOD proceeding); *Sweed v. City of Philadelphia*, 687 A.2d 59, 62–63 (Pa.Cmwlth.1997) (reversing decision of Civil Service Commission in IOD proceeding, which was based on uncorroborated medical reports); *Sammons*, 673 A.2d at 1004 (reversing Commission's decision in favor of employer that was based on uncorroborated hearsay); *see also Rox Coal Co. v. Workers' Compensation Appeal Board (Snizaski)*, 570 Pa.60, 807 A.2d 906, 914–15 (2002) (affirming conclusion of Workers' Compensation Appeal Board that Workers' Compensation Judge's finding violated *Walker* rule); *A.Y. v. Com., Dept. of Public Welfare, Allegheny County Children & Youth Svcs.*, 537 Pa. 116, 641 A.2d 1148, 1152 (1994) (mandating use of *Walker* rule in child abuse cases); *Broughton v. Housing Auth. of City of Pittsburgh*, 755 A.2d 105, 107–08 (Pa.Commw.2000) (applying *Walker* rule in grievance against housing authority).

■ However, as explained above, we hold that the proper standard regarding the admissibility of hearsay in IOD proceedings is that set forth in the WCA as the WCA and Regulation 32 share similar goals, Regulation 32 is silent as to the admissibility of such evidence, and there is a directly applicable WCA provision. While we agree with Officer Hayes' contention that in general, agencies should follow local agency laws where their own regulations are silent and therefore, the *Walker* rule would apply in most cases where an agency's regulations are silent on hearsay rules, the unusual

relationship between workers' compensation and IOD proceedings is such that it is only logical that the Civil Service Commission should borrow from the WCA instead of the more generic local agency law when it is possible and practical to do so. As that is the case with section 422, we conclude that the Commission did not err in relying on section 422 rather than the *Walker* rule and in therefore permitting Officer Hayes to rely on Dr. Chairman's unsworn notes.

For the foregoing reasons, the Commonwealth Court's decision is affirmed.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR dissenting.

I agree with the City of Philadelphia's central position distinguishing an evidentiary precept crafted by the Legislature relative to a specific administrative compensation scheme from interpretive principles that are more readily amenable to more generic application. As I would limit the application of the 52–week exception of Section 422 of the Workers' Compensation Act to the setting in which it has been prescribed, I also agree with the City that the rule embodied in *Walker v. UCBR*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976), pertained to the administrative proceedings in which Officer Hayes' eligibility for injured-on-duty benefits were adjudicated.[1] Since the

---

1. As the majority notes, this Court has endorsed the application of the *Walker* rule in the administrative law setting, *inter alia*, in *Rox Coal Co. v. WCAB (Snizaski)*, 570 Pa. 60, 75–76, 807 A.2d 906, 914–15 (2002). Citing to *Koppers Co. v. WCAB (Boyle)*, 113 Pa.Cmwlth. 161, 536 A.2d 509 (1988), *overruled on other grounds, Bell v. WCAB (Gateway Coal Co.)*, 118 Pa.Cmwlth. 320, 545 A.2d 430 (1988), Officer Hayes argues that, notwithstanding *Walker*, hearsay evidence can be admitted over objection when supported by other competent evidence. The question presented in this case, however, is not whether the evidence can be considered in one fashion or another, but rather, whether it can fill the role of the sufficient competent evidence which is necessary to sustain an essential finding of an administrative tribunal. In this regard, prevailing law makes clear that, where medical testimony is required, its tender in hearsay form (and absent an available hearsay exception) is insufficient, even where there is corroboration from lay testimony. *See Calcara v. WCAB (St. Joseph Hosp.)*, 706 A.2d 1286, 1288–89 (Pa.Cmwlth.1998); *see also Kensington Mfr'g Co. v. WCAB (Walker)*, 780

City objected to the hearsay medical evidence before the administrative tribunal, the first prong of *Walker* should control. *See Walker*, 27 Pa.Cmwlth. at 527, 367 A.2d at 370 (stating that "[h]earsay evidence, properly objected to, is not competent evidence to support a finding").

Accordingly, I respectfully dissent, as I would reverse the Commonwealth Court's order authorizing an award of benefits on the strength of the present record.

A.2d 820, 823 (Pa.Cmwlth.2001) ("The *Calcara* court made clear that corroboration [of hearsay medical evidence] by the testimony of the claimant or another untrained lay witness is insufficient."). Moreover, the line of cases relied upon in the *Koppers* decision has been expressly limited by the Commonwealth Court in light of its decision in *Walker*. *See Benson v. WCAB (Haverford State Hosp.)*, 668 A.2d 244, 248 n. 8 (Pa.Cmwlth.1995) ("To the extent that any of the cases relied upon by Employer might suggest that objected to hearsay could be used as substantive evidence in an administrative proceeding, the *Walker* line of cases has clearly established that the use of hearsay evidence is strictly limited to cases where there is both corroborating evidence and where no objection was made on the record.").